**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                          *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAUREN CURNOW, | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| ST. LUKE'S UNIVERSITY HEALTH | : | |
| NETWORK, | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Lauren Curnow (hereinafter "Plaintiff"), by and through her attorney, Koller Law,

LLC, bring this civil matter against St. Luke's University Health Network (hereinafter

"Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII")

and the Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as

follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Easton, PA.

3. Upon information and belief, St. Luke's University Health Network is a health system with

     a location and corporate headquarters located at 801 Ostrum Street, Bethlehem, PA 18015.

4. Defendant is an employer as defined by Title VII and the PHRA.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

7. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. Plaintiff exhausted her administrative remedies under Title VII and PHRA.

14. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment against Defendant.

15. The Charge was assigned a Charge Number 530-2025-09803 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

16. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated March 30, 2026. Plaintiff received the notice by electronic mail.

17. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

18. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

19. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

20. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

21. In or around August 2023, Defendant hired Plaintiff in the position of Standardized Patient ("SP") within the Department of Simulation.

22. Plaintiff was well qualified for her position and performed well.

23. In this capacity, Plaintiff was retained as a professional actor to portray patients in teaching simulations conducted for physicians and medical professionals in training.

24. Physicians serving as Preceptors in these simulations exercise complete control over the encounters.

25. By virtue of their position and authority, Preceptors are tantamount to supervisors with respect to Standardized Patients.

### PLAINTIFF WAS SEXUALLY ASSAULTED BY THE DESIGNATED PRECEPTOR

26. On or about September 3, 2025, Plaintiff was assigned to participate in a simulation exercise at St. Luke's Bethlehem Campus.

27. The designated Preceptor for this exercise was Dr. Ronald J. Buckley, M.D., Family Medicine, who was accompanied by four (4) medical students.

28. The simulation was intended to train medical students in locating pulses and assessing heart sounds.

29. Upon entering the room, Dr. Buckley held Plaintiff's hand for an extended period in a manner that was unprofessional, overly familiar, and created discomfort and unease.

30. During the instruction on auscultation of heart sounds, Dr. Buckley stated, in the presence of the students, that "what he usually does", or words to that effect, is lift a woman's bra from the bottom and place the stethoscope underneath.

31. Without seeking consent or confirming Plaintiff's comfort level, Dr. Buckley lifted Plaintiff's bra and inserted his hand directly under the garment onto her bare skin and left breast.

32. No stethoscope was used.

33. Plaintiff, in shock, suggested an alternative method that was less invasive and had been previously utilized by other Preceptors.

34. Dr. Buckley rejected this method, insisting that his approach was required, and directed the students to replicate the conduct, notwithstanding their visible discomfort.

## DR. BUCKLEY CONTINUED TO SEXUALLY HARASS PLAINTIFF DURING THE SIMULATION

35. During another portion of the simulation, Plaintiff was lying supine on the examination table.

36. Due to her height, her feet extended slightly beyond the table.

37. Dr. Buckley stood so closely at the end of the table that Plaintiff's feet nearly touched his genital area through his clothing, forcing her to move her legs repeatedly to avoid contact.

## DR. BUCKLEY PRESSED PLAINTIFF WITH REPEATED QUESTIONS FOLLOWING THE CONCLUSION OF THE SIMULATION

38. At the conclusion of the session, Dr. Buckley solicited feedback from Plaintiff in front of the students.

39. When she initially remained silent, he pressed her with repeated questions, coercing her to state that "all was fine", or words to that effect, despite her trauma and intimidation.

40. The encounter was traumatizing, humiliating, and constituted non-consensual sexual contact and sexual assault.

41. Such conduct would be wholly inappropriate even in a private physician-patient context, and was egregiously improper in an instructional simulation environment.

## ANOTHER STANDARDIZED PATIENT REPORTED BEING SEXUALLY HARASSED/ASSAULTED BY DR. BUCKLEY

42. On the same date, another Standardized Patient, Christine Kelly, reported experiencing substantially the same conduct by Dr. Buckley to Aimee Kipila, Simulation Department Manager.

## DR. BUCKLEY'S MISCONDUCT HAD PREVIOUSLY BEEN REPORTED TO DEFENDANT

43. Defendant was on prior notice of Dr. Buckley's misconduct, having previously counseled him regarding improper draping of Standardized Patients within the past year.

44. Despite this knowledge, Defendant failed to take effective corrective action.

## PLAINTIFF REPORTED DR. BUCKLEY'S SEXUAL ASSAULT/HARASSMENT TO HER DIRECT SUPERVISOR

45. Immediately following the September 3, 2025, incident, Plaintiff reported Dr. Buckley's sexual assault/harassment to her direct supervisor, Noah DeBiase, Standardized Patient Coordinator, via Microsoft Teams message who in turn relayed the report to Simulation Department leadership.

## PLAINTIFF COMPLAINED OF DR. BUCKLEY'S SEXUAL ASSAULT/HARASSMENT TO THE SIMULATION DEPARTMENT MANAGER

46. On September 4, 2025, Kipila called Plaintiff regarding her complaint, and Plaintiff complained to Kipila about Dr. Buckley's sexual harassment/assault.

47. Kipila instructed Plaintiff to prepare a statement and email it to her directly.

48. Plaintiff stated that she would provide a written statement, but felt that she needed to send it directly to Human Resources.

49. Kipila stated she hoped that this incident would be something "we could learn from", or words to that effect.

50. Plaintiff was offended by Kipila's comment as it was clear that she was not taking her complaint seriously.

## PLAINTIFF SUBMITTED A WRITTEN STATEMENT TO KIPILA AND HUMAN RESOURCES

51. On September 5, 2025, Plaintiff provided her written statement to Kipila and Allison Azar, Human Resources Business Partner.

52. Later that day, Kipila informed Plaintiff that Defendant would not notify her of any information regarding actions taken regarding her complaints.

53. On September 6, 2025, Azar confirmed to Plaintiff that she had received her written complaint.

## DEFENDANT DID NOT TAKE CORRECTIVE ACTION AND INSTRUCTED PLAINTIFF NOT TO DISCUSS THE INCIDENT WITH ANYONE OTHER THAN KIPILA

54. Notwithstanding these reports, Defendant did not take any corrective or remedial action.

55. Instead, DeBiase informed Plaintiff that she was not to discuss the incident with anyone other than Kipila, including DeBiase, her own direct supervisor.

7

## HUMAN RESOURCES DISMISSED PLAINTIFF'S COMPLAINT

56. On September 16, 2025, Plaintiff met with Azar and Kipila to discuss the findings of the investigation.

57. Azar and Kipila informed Plaintiff that her complaint was found to be inconclusive.

58. Azar stated that it was "your job" in reference to Dr. Buckley's sexual harassment/assault of Plaintiff.

59. Kipila then added that "the simulation was palpitation and auscultation", or words to that effect, in an attempt to explain Dr. Buckley's actions, despite him not having used a stethoscope as designated.

60. Plaintiff responded that the Standardized Patients had been informed that no touching should occur under their undergarments.

61. This is part of the guidelines used for Standardized Patients across health systems.

62. The Standardized Patients who are used for exams which require exposure and/or touching of private areas such as pelvic and breast exams are a different subset of Standardized Patients.

63. Azar proceeded to ask Plaintiff, "Who told you that?", or words to that effect, again dismissing Plaintiff's complaint.

64. Plaintiff became upset due to Defendant's failure to properly address her complaint and left the meeting.

## PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED

65. Later that day, Azar and Kipila called Plaintiff and asked what her intentions were regarding her employment with Defendant.

66. Plaintiff reasonably feared retaliation and intimidation and remained concerned about being subjected to more unsafe and/or inappropriate situations in the workplace.

67. As a result, Plaintiff felt that she had no choice but to resign from Defendant and informed Azar and Kipila of her resignation during the phone call.

68. Plaintiff was constructively discharged.

69. Dr. Buckley's conduct constitutes severe and pervasive sexual harassment, including unwanted physical contact with intimate body parts, creating a hostile work environment in violation of Title VII and the PHRA.

70. Defendant is strictly liable for Dr. Buckley's conduct as:

   a.   Dr. Buckley functioned as a supervisor in the simulation with direct authority over Plaintiff;

   b.   Defendant had prior notice of Dr. Buckley's inappropriate conduct, but failed to take prompt and effective corrective measures; and

   c.   Defendant engaged in retaliatory measures by restricting Plaintiff's communications and failing to address her complaint.

71. Defendant subjected Plaintiff to sexual harassment Plaintiff's position that she was sexually harassed in violation of Title VII and the PHRA.

72. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I**
**SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

73. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

74. Plaintiff is a member of protected classes in that she is female.

9

75. Taken together, the acts outlined above constitute a hostile work environment based on sex.

    a.  Plaintiff suffered intentional discrimination because of her membership in a protected class – female;

    b.  Such discrimination was severe and/or pervasive.

    c.  Such discrimination detrimentally affected Plaintiff; and

    d.  Such discrimination would have detrimentally affected a reasonable woman in Plaintiff's position.

76. The unlawful employment practices outlined above were intentional.

77. Plaintiff suffered tangible employment actions alleged herein, to include, but not necessarily be limited to, her termination.

78. Defendant knew or reasonably should have known of the sexual harassment.

79. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

80. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II**
**SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**
**PENNSYLVANIA HUMAN RELATIONS ACT**

81. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

82. The foregoing conduct created a sexually hostile work environment for Plaintiff.

83. Plaintiff suffered intentional discrimination because of her sex.

84. Defendant subjected Plaintiff to unwelcome conduct of a sexual nature that was severe and pervasive.

85. Defendant knew or should have known of the sexual harassment.

86. The discrimination detrimentally affected Plaintiff.

87. Plaintiff suffered tangible employment actions as alleged herein, to include, but not necessarily be limited to, termination.

88. The discrimination would detrimentally affect a reasonable woman in Plaintiff's position.

89. Defendant knew or reasonably should have known of the sexual harassment.

90. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

91. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, Lauren Curnow, requests that the Court grant her the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

11

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the PHRA.

(j)    Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)    Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 29, 2026                    **By:**    **_/s/ David M. Koller_**
                                               David M. Koller, Esquire (90119)
                                               Jordan D. Santo, Esquire (320573)
                                               2043 Locust Street, Suite 1B
                                               Philadelphia, PA 19103
                                               215-545-8917
                                               davidk@kollerlawfirm.com
                                               jordans@kollerlawfirm.com

                                               *Counsel for Plaintiff*

13